IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TRUST TITLE CO., | ) | |
| | ) | No. 11-cv-745 |
| Plaintiff, | ) | (Judge Lettow) |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, defendant respectfully requests that the Court dismiss the money claims of plaintiff Trust Title Company (Trust Title). Dismissal of Trust Title's money claims will narrow the issues to be tried to (1) whether the contracting officer properly terminated the contract for default and (2) whether the Government is entitled to excess reprocurement and other costs.

QUESTION PRESENTED

1. Whether the Court possesses jurisdiction to consider plaintiff's claims for termination for convenience costs and common law breach of contract damages where plaintiff did not submit a certified claim to the contracting officer prior to filing this suit.

STATEMENT OF THE CASE

I.  Nature Of The Case

Trust Title challenges the contracting officer's termination for default of two contracts that provided for Trust Title to perform real estate sales closing services for properties in North Carolina owned by the Department of Housing and Urban Development (HUD). *See* Complaint (Cmpl.) ¶¶ 9-11. Trust Title requests several forms of relief: (1) conversion of the termination for default to a termination for convenience (Cmpl. ¶ 148), (2) award termination for convenience costs of $382,244.47 (*id.* at ¶ 157), (3) award common law breach of contract

damages of $196,857 (*id.* at ¶ 166),  and (4) reversal of the contracting officer's final decision that Trust Title must pay excess reprocurement and other costs totaling $620,998.16 (*id.* at ¶¶ 159-62).  This motion concerns the Court's subject matter jurisdiction to entertain Trust Title's claims for termination for convenience costs and common law breach of contract damages.

II.     Statement Of Facts

HUD awarded Trust Title two requirements contracts to perform real estate closing services, in eastern and western North Carolina, respectively.  Cmpl. ¶ 9; *see also* Appendix (A) 1-52 (eastern North Carolina contract) and 53 -104 (western North Carolina contract).  Among other things, the contracts required Trust Title to represent HUD's interests at the closings of residential properties that HUD was conveying, accomplish the closings with error free closing documents, and ensure that HUD funds were accurately and promptly received by the Treasury.  Cmpl. at ¶ 11; A6, 58.  HUD awarded the contracts effective July 1, 2010.  Cmpl. ¶ 16; A1, 53.  After issuing a cure notice, followed by a show cause letter, the contracting officer terminated both contracts for default on November 9, 2011, because, among other things, Trust Title was unable to meet its obligations to perform the required closing services in a timely fashion and failed to provide HUD with a viable course of action that would alleviate an increasing backlog of closings that had accumulated during its performance.  *See* Ex. 1.

Trust Title alleges in the complaint that: "[t]here are three Contracting Officer's final decisions being appealed from.  (Exhibits 1, 2, and 3 hereto).  These final decisions are all Government claims against the contractor."  Cmpl. ¶ 5.  Exhibit one to the complaint is the contracting officer's November 9, 2011, final decision terminating the two contracts for default.  Exhibit two to the complaint is the contracting officer's final decision dated May 16, 2011, in which the contracting officer demanded Trust Title pay HUD $620,998.16 in reprocurement and

other costs related to the two contracts. Exhibit three is an October 7, 2011, letter from the contracting officer to Trust Title's attorney in which the contracting officer responded to a letter from Trust Title's attorney dated August 9, 2011. Cmpl., Exs 1-3. In an August 9, 2011, letter, Trust Title's attorney, in turn, responded to the contracting officer's May 16, 2011, final decision by requesting that the contracting officer withdraw the May 16, 2011, final decision and convert the termination for convenience into a termination for default. A105. In her October 7, 2011, letter, the contracting officer declined these requests by Trust Title's attorney, and reiterated HUD's demand for $620,998.16, as set forth in the May 16, 2011 final decision. Cmpl., Ex. 3.

Trust Title also states in the complaint that: "In addition to Plaintiff's appeal from these final decisions, asserting Government claims, Plaintiff asserts below individual breach of contract causes of action arising out of the Government actions and claims. Plaintiff seeks all of those costs it is entitled to recover under a termination for convenience when the default terminations are reversed by this Court." Cmpl. ¶ 6.

Trust Title does not plead -- nor could it -- that, before filing its complaint, it submitted a certified claim to the contracting officer in which it sought the termination for convenience costs or breach damages that it seeks in its complaint.[1]

ARGUMENT

I.   Standard Of Review

In deciding a RCFC 12(b)(1) motion, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the

---

[1] Over one year after Trust Title filed its complaint seeking breach of contract damages and termination for convenience costs, Trust Title submitted "settlement proposals" to the contracting officer. A124 (transmittal letter). Trust Title did not indicate that such proposals constituted claims for which it requested a final decision from the contracting officer and, as we demonstrate below, given that Trust Title had already filed suit to recover those monies, the contracting officer did not have any authority to act even if Trust Title had submitted a claim.

plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted).  When this Court's subject matter jurisdiction is placed into issue, the non-moving party bears the burden of establishing jurisdiction.  *Int'l Indus. Park, Inc. v. United States*, 80 Fed. Cl. 522, 526 (2008).

Whether the Court possesses subject matter jurisdiction to entertain any claims asserted in a complaint can be raised at any point during the litigation.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment" (citation omitted)); *Consol. Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed. Cir. 2003) ("[U]nder federal rules any court at any stage in the proceedings may address jurisdictional issues").

II.     The Court Lacks Jurisdiction To Consider Trust Title's Money Claims

The Contract Disputes Act (CDA) provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be in writing."  41 U.S.C. § 7103(a)(2).  As the Court of Appeals for the Federal Circuit has explained, the body of a claim need only contain a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision.  *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010).  The CDA also requires that the contractor certify claims in excess of $100,000.  *Id.* at 1329 (citing 41 U.S.C. § 605 (now § 7103(b)(1)).  The Court lacks jurisdiction to consider any claims that the contractor failed to submit to the contracting officer.  *Id.*  Jurisdiction in the Court is determined by the circumstances that exist on the filing date of the complaint.  *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1569 (Fed. Cir. 1993).

> A.  Precedent Requires A Defaulted Contractor To Submit A Money Claim To The Contracting Officer Prior To Filing Suit To Recover Such Money

In this case, Trust Title did not submit a certified claim to the contracting officer for its termination for convenience costs nor did it submit a certified claim for breach of contract damages. While the contracting officer issued two final decisions, one terminating the contract for default and another demanding excess reprocurement and other costs, those decisions do not allow Trust Title to avoid the statutory requirement that it submit its own claims for money to the contracting officer prior to filing suit to recover such money.  As Trust Title acknowledges in paragraph five of its complaint, both of the decisions at issue are the Government's claims against the contractor.  *See Deponte Inv., Inc. v. United States*, 54 Fed. Cl. 112, 116 (Fed. Cl. 2002) (citing *Malone v. United States*, 849 F.2d 1441, 1443 *modified on reh'g* 857 F.2d 787 (Fed. Cir. 1988)).  The decision to terminate a contract for default is separate and distinct from a contractor's money claim.  *Sharman*, 2 F.3d at 1568-70; *Armour of Am. v. United States*, 69 Fed. Cl. 587, 590 (Fed. Cl. 2006); *5860 Chi. Ridge LLC v. United States*, 2009 U.S. Claims LEXIS 145, at *5 (Fed. Cl. Apr. 23, 2009) ("this court has repeatedly held that it has jurisdiction to review the termination for default, but does not have jurisdiction over a contractor's related damages claim unless the contractor filed a claim for damages and received a final decision thereon prior to filing suit"); *see also Witherington Constr. Corp. v. United States*, 45 Fed. Cl. 208, 212 (Fed. Cl. 1999).

In *Sharman*, the contracting officer terminated the contract at issue for default.  *Sharman*, 2 F.3d at 1566.  When the contractor filed suit, both the Government and the contractor claimed entitlement to unliquidated progress payments.  *Id.* at 1568.  The Federal Circuit held that this Court did not possess jurisdiction to consider either the contractor's or the Government's claim to these progress payments because the contracting officer had not issued a final decision on

5

these funds at the time the action was filed. 2 F.3d at 1569. The Court explained that the default termination was not a final decision with respect to the progress payments because "'the default claim and the demand for return of unliquidated progress payments are separate and distinct . . . for jurisdictional purposes.'" *Id.* at 1570 (quoting *Crippen & Graen Corp. v. United States*, 18 Cl. Ct. 237, 241 (1989)). Thus, the Federal Circuit held that the default termination did not provide the Court with jurisdiction to consider either party's claim to the progress payments. *Id.*

The Federal Circuit also considered whether a letter from the contracting officer issued several months after the contractor filed suit and "calling itself a 'final decision,' on the government claim for unliquidated progress payments" provided the court with jurisdiction. *Id.* at 1571. The Court held that because the issue of the progress payments was already in dispute when the contracting officer issued this letter, the contracting officer did not have authority to act. The Department of Justice gained exclusive authority to act on the precise claims raised in the complaint once the contractor filed suit; this divested the contracting officer of authority. *Id.* (citing 28 U.S.C. §§ 516-20). Thus, the Court held that the contracting officer did not have authority to issue a final decision on the same claims already raised in the complaint and the purported decision was, therefore, a "nullity." *Id.* at 1572.

In this case, the contracting officer's decisions cited by Trust Title terminated the contracts for default and demanded payment of reprocurement and related costs. However, these decisions did not address any money claim presented by Trust Title because no such claim was ever presented to the contracting officer for a final decision, as required by the CDA. 41 U.S.C. § 7103. The first time that Trust Title articulated claims to recover its termination for convenience costs or its alleged breach of contract damages was in its complaint. Thus, as in *Sharman*, the contracting officer's decisions do not provide a jurisdictional basis for the Court to

consider Trust Title's money claims. *Id.* at 1570.

This analysis is confirmed by other decisions by the Court in other cases involving terminations for default. For example, in *Deponte Investments,* the contracting officer terminated for default a contract providing for the construction and leaseback of a building. The contractor did not submit any money claims to the contracting officer before it filed suit challenging the default termination and, like Trust Title here, sought breach damages. *Deponte Invs.*, 54 Fed. Cl. at 114. Citing *Sharman*, the Court held that "[t]he Federal Circuit has made it abundantly clear that a termination decision does not constitute a final decision on a money damage claim under the CDA for jurisdictional purposes." *Id.* at 115. The Court dismissed the money claims, observing that the default termination was a Government claim and that "[t]he contracting officer's final decision in this case makes no reference to a claim for money presently due because no such claim was ever submitted." *Id.* at 116.

Similarly, in *Armour of America v. United States*, the contracting officer terminated for default a contract for a light weight armor replacement system. 69 Fed. Cl. 587, 589 (2006). The contractor thereafter requested that the contracting officer reconsider the termination for default but its letter did not contain a request for monetary damages. *Id.* After the contracting officer denied this request, the contractor filed suit seeking, among other things, conversion of the termination for default into a termination for convenience and, like Trust Title, requested that it be awarded $2.2 million in termination for convenience costs. *Id.* at 590-92.

The Court held that it possessed jurisdiction to entertain the contractor's request that the termination for default be converted to one for convenience but that it did not have jurisdiction to entertain the contractor's request for convenience termination costs. *Id.* at 592-93. The Court held that, although the contractor had requested the contracting officer reconsider the default

7

termination, there was no evidence in the record showing that the plaintiff ever requested money damages of a sum certain, and there was no final decision by the contracting officer on a claim for convenience termination costs.  *Id.*  Citing *Sharman* and *Deponte Investments*, the Court dismissed the claim for termination for convenience costs for lack of jurisdiction.  *Id.*

> B. The Court Lacks Jurisdiction Over Trust Title's Claims For Termination For Convenience Costs And Breach Of Contract Damages Because Trust Title Failed To Submit A Certified Claim To The Contracting Officer To Recover Such Monies Before Filing Its Complaint

In this case, it is not clear from the complaint if Trust Title is aware that the CDA requires it to submit a money claim even though the contracting officer terminated the contracts for default.  In paragraph 6 of the complaint, Trust Title correctly observes that the contracting officer issued decisions that assert Government claims to recover reprocurement and other costs from Trust Title.  However, Trust Title seems to acknowledge that the money claims it has pled are separate and distinct from the Government claims terminating the contracts and demanding payment of reprocurement and other costs because it states: "In addition to Plaintiff's appeal from these final decisions, asserting Government claims, Plaintiff asserts below individual breach of contract causes of action arising out of the Government actions and claims.  Plaintiff seeks all of those costs it is entitled to recover under a termination for convenience . . . ."  Cmpl. at ¶ 6.  In any event, Trust Title does not allege that it submitted claims to the contracting officer to recover its purported termination for convenience costs or its alleged breach damages, nor is there any evidence that it did.

As the precedent we have cited demonstrates, it is settled in this Court that Government claims like those issued by the contracting officer in this case do not provide the Court with jurisdiction for the Court to consider a contractor's claims for termination for convenience costs.  *See, e.g.*, *Sharman*, 2 F.2d at 1570; *Armour of Am.*, 69 Fed. Cl. at 592.  The contracting officer's

8

final decision dated November 9, 2010, terminating the contracts for default contains no mention of any claim set forth by Trust Title to recover its purported termination for convenience costs or its alleged breach of contract damages because no such claims were ever submitted. Cmpl., Ex 1. Similarly, the contracting officer's final decision dated May 16, 2011, demanding that Trust Title pay HUD $620,998.16 also does not mention any money claim by Trust Title, again, because no such claim was submitted. *Id.*, Ex. 2.

We do not agree that the October 7, 2011, letter from the contracting officer is a final decision under the CDA because the contracting officer simply stated that she would not change her earlier decisions. *Id.*, Ex. 3. However, even if that letter is somehow construed as a "final decision" on Trust Title's request that the termination for default be converted to a termination for convenience, it is not a decision on any money claims. Given that the August 9, 2011, letter from Trust Title's attorney to which the contracting officer was responding did not purport to be a claim under the CDA, did not request a sum certain, and was not certified, A105, it was not a claim under the CDA. *See Armour of Am.*, 69 Fed. Cl. at 592; *see Maropakis*, 609 F.3d at 1327 (observing that the CDA does not define claim and that the court looks to the definition of claim contained in the Federal Acquisition Regulation, which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201).

Moreover, Trust Title cannot correct its failure to submit claims because when it filed suit for termination for convenience costs and breach of contract damages, the contracting officer was divested of jurisdiction to entertain Trust Title's demands to recover money under either theory. Thus, the contracting officer would have no authority to act even if Trust Title now

9

submitted certified claims to recover those monies. *See, e.g.*, *Sharman*, 2 F.2d at 1571; *5860 Chi. Ridge LLC*, 2009 U.S. Claims LEXIS, at *6-7.

To the extent that Trust Title is attempting to circumvent the requirements of the CDA by asserting a claim for "common law breach damages," such a claim fares no better because the requirements of the CDA are not optional.[2] The plain language of the CDA bars this claim because the CDA provides that, for contracts to which the CDA applies, "*Each claim* by a contractor against the Federal Government relating to a contract shall be in writing." 41 U.S.C. § 7103(a)(2) (emphasis added). The Federal Circuit has explained that the CDA is a waiver of sovereign immunity that must be strictly construed and the jurisdictional prerequisites of the statute must be enforced. *Maropakis*, 609 F.3d at 1329. Thus, when, as in this case, a contractor files suit but has not complied with CDA requirements with respect to the submission of claims for termination for convenience costs or breach damages, those claims must be dismissed. *Id.*

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss plaintiff's claims for money damages for lack of subject matter jurisdiction.

---

[2] Trust Title does not appear to contest that the contracts at issue are CDA contracts but it is in any event clear that HUD is an executive agency (*see* 41 U.S.C. § 7101(8)(A) and 5 U.S.C. § 101) and that contracts for closing agent services are services contracts to which the CDA applies. *See* 41 U.S.C. § 7102(a)(2).

|  | Respectfully submitted, |
|---|---|
|  | STUART F. DELERY<br>Assistant Attorney General |
|  | JEANNE E. DAVIDSON<br>Director |
|  | s/Bryant G. Snee<br>BRYANT G. SNEE<br>Deputy Director |
| OF COUNSEL: | s/Eric E. Laufgraben |
| MICHAEL N. O'CONNELL<br>Senior Trial Counsel | ERIC E. LAUFGRABEN<br>Trial Attorney<br>Commercial Litigation Branch |
| TODD P. MAIBERGER<br>U.S. Department of Housing<br>and Urban Development<br>Office of General Counsel<br>451 7th Street, S.W.<br>Washington, DC 20410 | Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 353-7995<br>Facsimile:  (202) 514-8624 |
| September 11, 2013 | *Attorneys for Defendant* |